In Re Peach State Labs. Ms. Blackburn, please proceed. Good morning. May it please the Court, my name is Jennifer Blackburn. I'm here on behalf of Peach State Labs. Peach State is appealing the rejection of claims as obvious in a reexamination. There are three main issues on appeal. The first two are the Patent Trial and Appeal Board's erroneous interpretation of two key claim terms. The Board's failure to give the proper construction led the Board to affirm an improper obviousness rejection. In both cases, the Board failed to consider and give the proper weight to disclosure in the specification that required a broader construction. In the first case, the Board read in a distinction into the specification between methods of removing calcium carbonate, concluding that solid dispersions were not covered by Claim 1. The specification, in fact, includes no distinction, but discloses overlapping methods that are used in conjunction. In the second case, the Board failed to give the proper weight to the examples in the specification, which describe applying urea hydrochloride to solid calcium carbonate. The Board found that this creates an aqueous suspension of calcium carbonate. The examples illustrate an embodiment of Peach State's construction of the term adding. Let's assume that we agree that the specification of this patent has enough details to support claims that cover both solubilizing in an aqueous solution the calcium carbonate, but also for removing, dissolving solid forms of calcium carbonate. But then it's really the prosecution history that we look to and conclude that what happened was a retrenchment in the scope of the claim during the original prosecution, where perhaps the originally filed claim covered both kinds of embodiments. But then through amendment, it's quite clear through the dialogue with the patent examiner that the claim now as issued was scaled back and restricted to just solubilizing calcium carbonate in aqueous solutions, whether it's a suspension or dispersion. I think that's the heart of the case for me, is what happened in the prosecution history. Well, the Board did not find a clear disclaimer in the prosecution history. They pointed to some instances in the prosecution history where there might be some uncertainty as to what happened, but I think we pointed to some other places in the prosecution history where it's not clear, but they did not find a disclaimer. In fact, they pointed to the district court's opinion in the concurrent litigation where the district court also found no disclaimer, and they did not fault that. They pointed to an amendment in the prosecution history where the entire term, calcium carbonate in aqueous suspensions and dispersions of calcium carbonate, the entire term was added, and that doesn't limit the term at all because the entire term was added. There was also an amendment to delete some claims, but along with that amendment, the applicant said that the amendment should not be construed to disclaim anything, and that they may pursue that in a later application. There was a prior art reference that was relied upon for the initial rejection of the originally filed claim which had been amended. Are you talking about the Young reference? Yeah, I think so. What Young and Sargent, were they for removing solid forms? The Young reference was related to removing obstructions from conduits. It talked about organic obstructions. Really, it related to pipes and sort of cleaning out more or less like unclogging your pipes in your bathroom, that type of thing, and using urea sulfate to do that. I guess it's your position that the claim was initially written broadly to cover both removal of calcium carbonate, whether it's in a solid form or in some liquid form, and then what happened through amendment, what, didn't alter that fact? The claim was originally written to remove undesirable solids. The specification talks about suspensions and dispersions and deposits, and the claim was written broadly to talk about undesirable solids, and the examiner issued a rejection under 112 to clarify what those solids were, and that's what the amendment was made for, to respond to that 112 rejection, and the claim was clarified to say calcium carbonate and aqueous suspension, and then the dispersions of calcium carbonate. The 102 or 103 rejection at that point, I can't remember what it was in the first office action, was a separate rejection, and the rejection, Young, that I think you're talking about, was actually a rejection of other claims, claims 14 through 20-something, which were eventually canceled. I'm following up on Judge Chen's question, and for me also, I think the difficulty I'm having is with the prosecution history and how I ought to interpret it as impacting the construction that you seek, and what about on A2281, give me some context similar to what you just provided to Judge Chen about why I shouldn't interpret the language here and the subsequent, I'll let you find it first before I go on. Okay, so on 2281, what we have here is a rejection, and you have the examiner rejecting a bunch of dependent claims, and he says that he's rejecting the dependent claims because it's submitted that claims 1 and 14, the independent claims, are now drawn to aqueous suspensions and dispersions of calcium carbonate, which do not appear to be on the surfaces of the above claims. So we have these dependent claims, which were clearly surface claims by their express language. The examiners rejected them on the basis that he understands the independent claims to no longer apply to surfaces, and then he says, so he rejects them, and then without correcting any of this, the applicant simply then pulls out, withdraws all those dependent claims, and that ends their inclusion in this prosecution. So I guess why isn't this a clear signal to the outside world that the examiner understood the independent claims, which came through and are the ones at issue now, to not include surfaces and be limited to aqueous suspensions and aqueous dispersions, and that he said that pretty clearly, and that's why he rejected the subsequent dependent claims as not having antecedent basis in the independent claims, and that the applicant acquiesced, whether you agree with it or not, whether they had to or not, they acquiesced and withdrew those claims. Why isn't that tantamount to a disclaimer? Well, it's not a disclaimer, for one thing, because in the response where they cancel the claims, they ask that the claims be canceled without prejudice or disclaimer to the subject matter claim they're in, so they expressly stated that they were not disclaiming the subject matter claims they're in. There's a case that... That's pretty boilerplate language, right? The examiner gave a really clear indication of his view of the scopes of Claim 1 and 14 as not including aqueous dispersions. The applicant comes in, acquiesces, cancels all the claims, but don't accept this as... I mean, that's boilerplate language. I see that all the time. Don't accept anything about what we're doing here as meaning anything at all. Right, and there's a case cited in our brief that... I'm sorry that I can't give you the exact site right now, but I will find it and give it to you, if not now in rebuttal, that says that it is not enough that you cannot base a disclaimer on an argument that the patent or that the applicant did not make. There's a case that the PTO tried to cite to say that because we rejected those claims that you can infer that we are agreeing with the examiner. That case is not on point because in that case, the applicant actually took the language that the examiner used and incorporated it into their claims by amendment. So if your argument that disclaimer is a really high standard, it requires clear and unmistakable action by the applicant, and the examiner can say whatever he wants, and the applicant's silence can never be tantamount to disclaimer? You liked what you said up until that last part. I liked what you said up until that last part. I don't like the word never. In this case, I don't think it goes that far. We did say no disclaimer. We did also, in our next response, we did talk about the Moss Declaration. I think there is some disagreement there, but our position is that we submitted the Moss Declaration. The Moss Declaration talks a lot about fuming. It also talks about cleaning solids off of surfaces. It never talks about solubilizing calcium carbonate in a suspension or in anything aqueous, particles in solution, in effluent, anything that is the other embodiment of dissolving calcium carbonate, but it does talk about dissolving calcium carbonate on surfaces. The concern I have is we don't have just a stand-alone statement from the examiner. What we have instead, it appears, is more of a meeting of the minds between the examiner and the applicant because the examiner was responding to your prior office action response, which is where the amendment occurred, where there was some narrowing of the claim. However, that's the debate. To what degree did you narrow it? But at 2277, A2277, this is where the applicant does the amendment, and then in the remarks section states, the invention is now claimed provides a method to lower the solids content of industrial liquids that contain calcium carbonate and to treat the effluent from paper manufacturing and recycling processes. I understand the term effluent to refer to some kind of liquid. So we see a statement like that. You make your amendment. You're debating what the meaning of the amendment means. I think it's clear here that the invention is now claimed through the amendment is really talking about removing these kinds of undesirable solids from liquids. And then we go to A2281, which is where we start off with Judge Moore, where she points to where the examiner says, okay, now it is now submitted that these claims as amended are drawn to aqueous solutions. And then that's where the story ends. So do you understand why, I guess from this perspective, it looks like, aha, originally the claim meant something broader, but now there's a conversation going on, and through amendments and conversation, we now understand that the claim doesn't mean what the scope of the claim originally was in the first instance. I understand where you're coming from, but I disagree because that's where the story ends. I think there's more to the story. There's more in the prosecution history. There's more in the response that we filed after that, where we said there's no disclaimer. There's more in our response where we filed the Moss Declaration. Thank you. And I think that there is no disclaimer, and we absolutely are required to have some disclaimer. And I see that I'm in my rebuttal time, so I'm going to sit down. Okay, save the remaining time. We'll restore your call for a minute. Ms. Hunt, please proceed. May it please the Court. What's at issue here is fundamentally a strong and simple obviousness rejection. There is a known compound and a substitution of a known compound in a known process. The motivation to make that substitution is the reduced fuming and corrosive, noxious and corrosive fumes from the prior compound, hydrochloric acid. Here, the claims, Ford's claim construction was correct. It was supported by the intrinsic evidence, particularly the prosecution history, but our view is also the claims and the specification. Moreover, although we didn't get to this artist's analogous here, based on, among other things, a clear statement in the 279 patent that acidizing wells is relevant to the invention. Is that using the patent owner's own statements against it? Maybe patent owners, what they've disclosed in their patents is providing some kind of inventor-centric insights, and now here you're using that against the inventor as a basis to say, well, it would be obvious to look at all these other areas. Well, Your Honor, that's fair given the public notice function of patents in trying to figure out what's analogous to the claimed invention and what's relevant. There's a lengthy statement in this specification about all the different areas in which this invention is relevant and can be used and in which urea hydrochloride is relevant and can be used. So to the extent of whether or not a particular problem, whether or not an inventor would look to an art to solve a particular problem, it's very fair to use the inventor's own statement to try to find the answer to that question. Do you agree that in order to affirm, we have to agree with the board's claim construction if only because that claim construction affects the evaluation of the objective edition? No, Your Honor. We do think it's a proper claim construction and that the court should confirm under it. But even under Peach State's claim construction, the board found that, for example, the Dexter and the Williams declarations were not sufficient evidence of commercial success. The secondary considerations did not outweigh the strong case of obviousness here.  What the success was attributable to, dependent on the scope of the claim. It was, and the initial board's discussion spent a lot of time on Nexus saying that a fair amount of what is asserted is outside the board's claim construction. But then the board goes on to say, even if, and that's on pages 824 and 825 of the board's decision, even if this is the case, that there is some conversion of calcium carbonate that would be claimed here, it goes on to say that both the Williams and Dexter declarations show that the product is successful, but it's hard to judge the level of success. So we only have from Dexter and Williams the amount of pounds that were sold. We don't have a discussion of what the relevant markets are. We don't know how much those towns constitute in which markets. This urea hydrochloride appears to be sold for processes in cleaning lines, in dissolving concrete, many different applications, and we don't know what the different products in those markets are and whether or not the million pounds from the Dexter declaration or the 64 million pounds from the Williams declarations are significant. Furthermore, on the price of hydrochloric acid, that's something that also doesn't necessarily depend on the scope of the claims. There's no evidence as to why the price was higher here or that it affected a significant market. So just assume for a second that the claim construction is wrong and Peep's state is right. What kind of declaration would you want to see that would then make the PTO give it much more persuasive weight? I think there are many that could suffice here. For example, one that showed what markets are affected and what the size of sales in that market is would suffice if it is significant. For example, if it said, we sold 64 million pounds, they could put another declaration in or they could have put another declaration that said, well, there's five relevant markets, line cleaner, concrete, water processing, in paper manufacturing, and let's say three, however many there might be. In that case, 64 million is divided up this way. We have 25 million in line cleaners, and that's 50% of the market, and we got that quickly. And 35% is in concrete, and that's significant in that market. And 75% is in water processing. So that type of evidence would suffice. Would it also have been sufficient if they had come in with this evidence that showed prior to their invention they were selling only 20 million tons or pounds or whatever it is of this stuff, and then after their invention they were selling 64, with the hint being because everybody's buying it now for this additional use which we have invented. I mean, any context at all would have helped. Yes, Your Honor, I think that could be sufficient. Evidence of switching, the firm evidence of switching can be sufficient, that if you have enough customers switching from a prior art product to your new product, absent, of course, evidence that there's some other conflict in marketing. Well, going into the claim construction argument, though, I mean, it took me a while to wrap my head around the idea that you were arguing a narrower construction was the broadest reasonable construction. I'm sure that caused you a little internal conflict as well. I don't know I've ever seen you guys stand up and argue that you want a narrower construction and they want a patent, you want the broader one, and you're saying yours is the broadest reasonable one. Suppose that this was the universe I'm in, I'm not saying it is, but suppose that I actually thought your construction is the right one, but that this disclaimer question is, in fact, really close for all of the reasons that the patentee has presented, and that I actually think if the analysis is broadest reasonable as opposed to asking me to come up with the definitive one, then theirs, in light of the close call on the disclaimer question and in light of the fact that the spec clearly articulated embodiments that involved solids, why doesn't she have the better of the arguments at this stage, which is broadest reasonable construction? Well, I guess I want to try to break that question down. I mean, generally speaking, it is a bit unusual for us to be arguing a narrower construction. The record here, especially the prosecution history and the specification, I think the board mandates that result here. What about the specification? I just didn't see anything in the specification that did anything but hurt or, quite frankly, cut against your construction. Well, there is a distinguishment between dispersions and dissolving residues from surfaces. So they're always treated as two separate facts, two separate actions. And then in the specification, lowering the solids contents of industrial liquid is treated interchangeably with dissolving suspensions and dispersions. So if you go through the abstract, in fact, it talks about removing surface buildup residues or lowering the solids content of industrial liquids. Certainly there are some unclaimed embodiments here, which would be the removing residues from surfaces, but there are other unclaimed embodiments in the specification. For example, lowering pH. But here's the bottom line. The whole question is, it's an aqueous adjective, aqueous solution for dispersion. The whole question comes down to, does it mean aqueous solutions and any kind of dispersion or aqueous solutions and aqueous dispersion? Oh my gosh, flip a coin. I mean, you know, that can logically, in a plain meaning way, mean either thing. And where it's ambiguous, Johnna, as you're saying, the appropriate thing to do is to look to the intrinsic evidence, the specification. And here, the file history, because it's a re-examine, the original file history is relevant. Because the file history particularly is so clear, especially page 2277 and 2278, you know, again, based on the public notice function and of how the public should read this claim, it should be considered to be obvious here and the board's claim construction should prevail. For example, some of the detailed issues that I'd like to respond to. To the extent that the statements on page 227 and 2278 were made in response to 112, they were also made in response to the 102, 103 rejections. For example, on page 2278, there's a statement saying, not only is the method not disclosed by Young, it is not even obvious in view of Young. So it's clear that they're responding also to the substantive rejections in their arguments in the record. As for Young, Young does disclose cleaning pipes and cleaning obstructions from pipes, but it defines that very broadly. It talks about fouling, not necessarily complete obstructions, and it defines conduits very broadly, including screens, filters, nozzles, etc. So when the applicant here was distinguishing its invention, it's fairly clear that it's saying, look, Young was addressed to problems associated with precipitated salts, salts that are no longer in a solution or a dispersion. Here, dispersions and suspensions of these salts cause different problems, as discussed in the specification, which also talks about the differences between those two problems. For example, if the effluent of the plant contains dispersions or suspensions of calcium carbonate, it can't be disposed in publicly owned waste treatment facilities. And to the extent that there are arguments made for 112, they're still binding in the prosecution history. If there's an argument, whether or not it's for an amendment or an argument, whether or not it's for 112 or 103 or 102, it still is binding on the applicant. And then there's the dependent claims issue, Your Honor, that you brought up. It's not just this, that the prosecution history is consistent throughout. After this was told to the examiner, a reasonable examiner would understand, okay, we're not trying to claim services anymore. We tried to claim that before, and we're not claiming it anymore, so what did the examiner do? Well, the examiner came back and said, okay, look, you've got these dependent claims, and these dependent claims look like they are directed to removing buildup sensors. But the claimers have to be clear and unmistakable. Suppose in response to the examiner's statement about, I now understand Claim 1 and 14 to apply only to aqueous solutions and aqueous dispersions. Suppose in response to that they said, in order to garner allowance, we will relinquish the dependent claims, we intend to bring them in a continuation, and we want to be clear, we are not disclaiming the fact that Claim 1 and Claim 14 cover both aqueous solutions and dispersions of all kinds. Suppose they were really crystal clear about all of it in their response. Under those circumstances, would you still argue that this prosecution creates a clear disclaimer? A clear, unmistakable disclaimer. Well, two parts to your question. One is, I don't think there needs to be a clear, unmistakable, undisclaimer here, because the claim is vague, as you mentioned. It's a toss-up whether or not it's aqueous. Okay, but assume that I don't buy any of your arguments about the specification. The claim is vague, and you've got to choose the broadest, reasonable construction. You're not in my shoes. You don't get to choose the exactly right one. You have to take the broadest, reasonable one. You've chosen the narrower of the two. So under those circumstances, say your whole case hinges on prosecution history, now go to MIFAC. Suppose they had unequivocally disclaimed any disclaimer. Then I don't think it would be present here. Then you would have to read all the prosecution history together, and if they said, look, by the way, in our response to 2278, it may have sounded like we were trying to only claim liquids here, but we are actually not. We want to claim the solid residues. And if they've made that clear, then if you look at the prosecution history as a whole, they would be saying, well, we did not disclaim this. We're not intending to. And so your point would be the boilerplate, because they did say after the examiner's statement, we're going to withdraw the claim, but nothing in the course of this action should be construed as disclaimer. You think that boilerplate language isn't enough to call into question what the rest of the prosecution history demonstrated they did. Not where it doesn't specifically address all the other things that they did, which were many other things. So it doesn't address their fairly clear and fairly lengthy distinguishing of the prior art and their statement of what is intended to be covered in light of the obviousness rejections and the 112 rejections and the 102 rejections just immediately prior. It doesn't address the examiner's misunderstanding or understanding, if it's their case it's misunderstanding, of what the claims are. The examiner understood and made very clear that the examiner believed that he thought that the claims were limited to surfaces at that point and believed that they needed to cancel the dependent claims. And then if you look at their response even to that, that perpetuates this understanding. And that's at claim appendix page 2288, where they say, okay, we're canceling the claims because the examiner submits they are now drawn to obvious suspensions and dispersions. And then they say, by the way, there's one other claim, it was claim 18, that actually wasn't drawn to surfaces, it was drawn to being in liquids. They say, by the way, I think that was a mistake, examiner, because claim 18 is drawn to solubilizing obvious suspensions, plain old obvious suspensions. The claim actually is a dependent claim that depended from 14, which is obvious suspensions and dispersions. So again, they're treating obvious suspensions as coextensive or synonymously with dispersions. And they say just as a claim from which it depends, claim 14, which is, again, an independent claim with the same limitations as claim 1. So rather than all these actions together make it hard to avoid, at least from the board's perspective, which I think is correct, the conclusion that the claims do not cover the removing of residues from surfaces. Okay, thank you, Ms. Hunt. Ms. Blackburn, you have three minutes of rebuttal time. The first thing that I want to address, just because I don't want it to get lost in this discussion of prosecution history disclaimer, and I'll be brief on this, is that Ms. Hunt said that even under Peachtate's constructions that there wasn't sufficient evidence of commercial success. And I want to go back and address that point, because we think there most certainly was enough evidence of commercial success. I'm sorry, I don't think she quite said that there wasn't enough evidence, but rather that the board said even under a narrower construction, we find that there wasn't enough evidence. So maybe it could have found either way. The question is what it did find. It did, okay. So our position is that under Peachtate's broader construction, that the evidence that we presented would be sufficient to find secondary considerations would outweigh any prima facie case of obviousness. What the board did was that first they addressed the sales data alone, and they cited a case in support of this, in Ray Wong where the applicant only presented sales data alone and said that sales data alone is insufficient. And then they omitted the sales data without considering it along with any other evidence. That was error because you're supposed to weigh the evidence all together. Then they went through some of our other evidence. Did you supply any market share evidence? We did not supply any market share evidence. No market share evidence was available. There are some cases that say that sales data without market share evidence but combined with other evidence of secondary considerations could be part of a case that's sufficient. Case law says you should connect your secondary consideration evidence, objective evidence, with the merits of the claimed invention. Yes. Would it be fair to characterize the merits of this claimed invention as the addition of urea to the pyrite hydrochloride when forming these cleaning methods? The cleaning methods, yes. So the marketing materials describe it as safer and effective for removing calcium carbonate. It describes it as safe on skin, non-corrosive when it's in contact with metal. One thing the patent office has said is that DIL discloses the benefits of the invention. But DIL really only talks about fuming. It only talks about the fumes that are released from a well bore when the urea hydrochloride is at the bottom of a well. It definitely doesn't talk about being safe on skin. It doesn't talk about it in contact, the way the marketing materials and the way that the invention is demonstrated to customers, actually holding it in your hand, sticking your finger in it. So, yeah, I think there's definitely a nexus with the properties of urea hydrochloride and the way it's used and the way it's marketed to customers. And then I want to address something that Ms. Hunt said right at the end of her argument, talking about whether or not there was a disclaimer in the prosecution history. The prosecution history, there must be a clear and unmistakable disclaimer in the prosecution history. The applicants are not required to contest the examiner. Maybe we should have said something more clearly in the prosecution history than we did. But it's not the lack of a disclaimer that's required to be clear and unmistakable. It is the disclaimer that's required to be clear and unmistakable. And there simply is no clear and unmistakable disclaimer in the prosecution history. Two tribunals have looked at the prosecution history and found that. The district court in the copenning litigation looked at the prosecution history and found no clear disclaimer. The board looked at the prosecution history. They didn't find a clear and unmistakable disclaimer. Is that district court litigation ongoing at the present time? It's stayed at the present time, pending this re-exam. Okay. So, I think I'm over my time. Yes, you are. Thank you. Both counsel cases taken under submission.